United States District Court
Southern District of Texas
FILED

DEC 1 2 2001

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **FRANCISCO J. PEREZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. B-00-153** |
| | § | §    **(Jury Requested)** |
| **NABORS CORPORATE SERVICES, INC.** | § | |
| **A/K/A/ NABORS DRILLING USA, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## JOINT PRETRIAL ORDER

Pursuant to this Court's Order, the Parties file their Joint Pretrial Order.

**1.    APPEARANCE OF COUNSEL**

James P. Grissom
2408 North Conway
Mission, Texas 78572
(956) 424-1644
(956) 424-1640 (FAX)

ATTORNEY FOR PLAINTIFF FRANCISCO PEREZ

Thomas H. Wilson
Merritt B. Chastain, III
VINSON & ELKINS
2300 First City Tower
1001 Fannin, Suite 2300
Houston, Texas 77002-6760
(713) 758-2042
(713) 615-5704 (FAX)

ATTORNEYS FOR DEFENDANT NABORS
DRILLING USA, INC.

2.   **STATEMENT OF THE CASE**

Plaintiff alleges he was discharged on October 5, 1998 in violation of the Family Medical Leave Act ("FMLA"). Defendant denies Plaintiff's allegations and asserts that it discharged Plaintiff simply because he failed to report to work on October 5, 1998 without explanation and had failed to report to work on several past occasions, also without explanation.

3.   **JURISDICTION**

Federal question jurisdiction exists under the FMLA, 29 U.S.C. § 2601 et seq.

4.   **MOTIONS**

There are no pending motions before the Court.

5.   **CONTENTIONS OF THE PARTIES**

**Plaintiff's Contentions**

a.   Plaintiff contends that he was dismissed from his employment in violation of the FMLA and that he reported a serious health condition of his son in a timely manner to his supervisors as required by the FMLA.

**Defendant's Contentions**

a.   Nabors contends that it discharged Plaintiff because he failed to report to work on October 5, 1998 and provided no excuse for his failure to report.

b.   Nabors contends that Plaintiff had failed to report to work without first informing Nabors or any of its representatives on several occasions prior to October 5, 1998.

c.   Nabors contends that Plaintiff never informed it or any of its representatives that he missed work because he had to care for a son with a serious health condition.

d.   Nabors contends that it made its decision to discharge Plaintiff without any knowledge that Plaintiff supposedly had to take his son to the doctor on October 5, 1998.

e.   Nabors did not discharge Plaintiff because he took his son to the doctor on October 1, 1998.

f.   Nabors contends that Plaintiff's son's, Julio Cesar, asthma condition did not constitute a serious health condition under the FMLA.

g.   Nabors contends that Plaintiff never provided adequate notice under the FMLA for his failure to report to work on October 5, 1998.

-2-

h.    Nabors contends that Plaintiff failed to mitigate his damages during the six months after his discharge from Nabors.

i.    Nabors contends that Plaintiff has now mitigated his damages to such an extent that he is not entitled to lost wages.

j.    Nabors contends that it acted in good faith and had reasonable grounds for believing that its act of discharging Plaintiff on October 5, 1998 was not in violation of the FMLA.

## 6.    ADMISSIONS OF FACT

a.    Nabors discharged Plaintiff on October 5, 1998.

b.    Plaintiff was an at-will employee with Nabors, did not have a contract of employment with Nabors, and could quit or be discharged at any time and for any reason.

c.    Plaintiff received a copy of Nabors' employee handbook and the rules about absences from work were explained to him.

d.    Nabors explained to Plaintiff the rights and requirements of the FMLA.

e.    Nabors posted information about the rights and requirements of the FMLA on the bulletin board at Rig 440.

f.    Plaintiff understood that he had to call in before his shift started to inform the tool pusher if he was going to be late for work or miss work.

g.    Plaintiff's regular schedule with Nabors required him to work seven days on the rig (his shift) and then he was off duty for the ensuing seven days (his days off).

h.    The day he regularly reported to the Nabors rig for his shift was on Monday at 5:30 a.m.

i.    After reporting to the Nabors rig at 5:30 a.m., he commenced work at 6:00 a.m.

j.    Plaintiff's seven-day shift ended on Sunday at 6:00 p.m.

k.    The only benefits Plaintiff received while working for Nabors included life insurance.

l.    Plaintiff worked on Nabors' rig 440 as a motor man at the time of his discharge.

m.    Rig 440 was located in the Laredo, Texas area in October 1998.

n.    Plaintiff lived in Edinburg, Texas in October 1998.

o.    Cristo Ramirez, the toolpusher on rig 440, informed Plaintiff that he had been discharged.

p.    Plaintiff's son's, Julio Cesar, doctor's note and prescription indicates that the doctor saw Julio Cesar on October 1, 1998.

q.    The doctor note and prescription dated October 1, 1998 from Dr. Jose Amaya Julian is true and correct and is a copy of the document given to Plaintiff when he and Julio Cesar left the doctor's office on October 1, 1998.

r.    Plaintiff did not give a copy of the doctor's note dated October 1, 1998 from Dr. Jose Amaya Julian to anyone from Nabors.

s.    After being evaluated by the doctor in Mexico on October 1, 1998, Plaintiff and Julio Cesar returned to their home in the United States.

t.    The doctor never admitted Julio Cesar to the hospital or kept him under his care after October 1, 1998.

u.    Julio Cesar has not seen Dr. Jose Amaya Julian since October 1, 1998.

v.    Since October 1998, Julio Cesar has not been to any doctors for asthma problems.

w.    Julio Cesar does not have a regular doctor that he sees for asthma.

x.    Julio Cesar has never been a patient in any hospitals for his asthma condition.

y.    Julio Cesar no longer has any problems related to asthma.

z.    For the first six months after his discharge from Nabors, Plaintiff did not look for work.

aa.   Plaintiff did not work for any employers or perform any work for compensation in 1998 after his discharge.

bb.   Plaintiff's weekly unemployment check, which he received each week for six months, was $438.

cc.   Plaintiff worked for several employers in 1999 after March or April 1999, including Sam Cane Beef, Valley Truss, Budget Tours, and produce field owners in Idaho.

dd.   Plaintiff began working for Helmrich & Payne in January 2000.

ee.   Plaintiff's initial rate of pay with Helmrich & Payne was $11.25 per hour.

ff.   Plaintiff receives medical and dental insurance with Helmrich & Payne and is a participant in the company's 401K Plan.

gg.     Plaintiff presently works for Helmrich & Payne and has experienced no gaps in employment with this employer since January 2000.

hh.     Helmrich & Payne reported that it paid Plaintiff $38,354 in 2000.

ii.     Plaintiff received a promotion to a motor man position with Helmrich & Payne in May 2001.

jj.     When Plaintiff received the promotion in May 2001, he also received a pay raise to $15.05 per hour.

## 7.     CONTESTED ISSUES OF FACT

a.      Whether Plaintiff contacted Nabors or any of its representatives on October 5, 1998 before his shift started.

b.      Whether Plaintiff ever informed Nabors or any of its representatives that he would have to miss work on October 5, 1998 because his son, Julio Cesar, was sick and he had to take him to the doctor.

c.      Whether Plaintiff ever informed Nabors or any of its representatives that he missed work on October 5, 1998 because his son, Julio Cesar, was sick and he had to take him to the doctor.

d.      Whether Plaintiff's son was seen by Dr. Jose Amaya Julian on October 5, 1998.

e.      What Cristo Ramirez told Plaintiff was the reason for his discharge on October 5, 1998.

f.      Whether Julio Cesar's (Plaintiff's son) asthma condition constituted a serious health condition under the FMLA.

g.      Whether the notice allegedly provided to Nabors by Plaintiff was sufficient to convey that he was needed to care for a child (his son) with a serious health condition.

h.      How much Plaintiff earned through subsequent employment since his discharge versus that which he likely would have earned had he not been discharged.

## 8.     AGREED PROPOSITIONS OF LAW

a.      The Family Medical Leave Act ("FMLA") entitles an eligible employee to 12 weeks of leave during a 12 month period.

b.      The FMLA allows an eligible employee to take leave to care for a child with a serious health condition.

c.      If the condition of the employee's child does not constitute a "serious health condition" under the FMLA, then the employee is not entitled to FMLA leave.

d.      The FMLA defines a "serious health condition" as an illness, injury, impairment, or physical or mental condition that includes (1) inpatient care (i.e., overnight stay) in a hospital, hospice, or residential medical care facility; or (2) continuing treatment by a health care provider.

e.      Under the FMLA, the employee must notify the employer of the need for leave (at least by telephone, fax, or in person) before taking such leave and/or before the start of the employee's work shift or schedule.

f.      The notice of the need for leave under the FMLA must at least be sufficient to reasonably apprize the employer that leave is needed because of a serious health condition.

g.      Assuming proper and timely notice, the FMLA prohibits an employer from discharging an employee who exercises his rights under the FMLA.

h.      The plaintiff must prove that the employer's legitimate reasons were not its true reasons for its decision, but a pretext for discrimination or retaliation to establish discrimination or retaliation under the FMLA.

i.      Bald assertions of discrimination and a plaintiff's subjective belief that discrimination occurred are inadequate to permit a finding that proscribed discrimination motivated the defendant's actions against the plaintiff.

j.      A plaintiff under the FMLA has a duty to mitigate his damages by exercising reasonable diligence to locate and obtain substantially equivalent work.

k.      "Substantially equivalent employment" is employment that affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status" as the position he left.

l.      Plaintiffs who fail to exercise reasonable diligence to obtain substantially equivalent employment are denied back pay during the periods they failed to exercise such diligence.

m.      Front pay is only available when reinstatement to the former position, the preferred remedy, is not feasible.

n.      If the plaintiff does not desire reinstatement because he has located a better job or because of some other voluntary reason of the Plaintiff, front pay is not available.

o.      Mental anguish and punitive damages are not available to litigants under the FMLA.

**9.      CONTESTED PROPOSITIONS OF LAW**

   None.

10. **EXHIBITS**

   **Plaintiff's Exhibits:** Four copies of Plaintiff's Exhibit List are attached under Tab A.

   **Defendant's Exhibits:** Four copies of Defendant's Exhibit List are attached under Tab B.

11. **WITNESSES**

   **Plaintiff's Witnesses**: Four copies of Plaintiff's Witness List are attached under Tab C.

   **Defendant's Witnesses**: Four copies of Defendant's Witness List are attached under Tab D.

12. **SETTLEMENTS**

   The parties are presently attempting to negotiate a mutually-satisfactory settlement of this matter.

13. **TRIAL**

   The parties estimate that the trial will last approximately 2-3 days.

14. **ATTACHMENTS**

   **Plaintiff's Attachments**: Two copies of Plaintiff's Proposed Voir Dire Questions and Proposed Jury Charge are attached.

   **Defendant's Attachments**: Two copies of Defendant's Proposed Voir Dire Questions and Proposed Jury Charge are attached.


_____          Date: _____
United States District Judge

**APPROVED:**

JAMES P. GRISSOM
TBA No: 08511900
2408 North Conway
Mission, Texas 78572
(956) 424-1644 (Telephone)
(956) 424-1640 (Telecopy)

**ATTORNEY FOR PLAINTIFF FRANCISCO PEREZ**

-7-

_Merritt B. Chastain III_
_by permission_

THOMAS H. WILSON
State Bar No. 21726500
MERRITT B. CHASTAIN, III
State Bar No. 00793491
VINSON & ELKINS, L.L.P.
1001 Fannin, Suite 2300
Houston, Texas 77002-6760
(713) 758-2042 (Telephone)
(713) 615-5704 (Telecopy)

**ATTORNEYS FOR DEFENDANT NABORS
DRILLING USA, INC.**

### CERTIFICATE OF SERVICE

I certify that on this the 12th day of December, 2001, a true and correct copy of the foregoing document was served on all counsel by certified mail, return receipt requested, as follows:

> Thomas H. Wilson
> Merritt B. Chastain, III
> 1001 Fannin, Suite 2300
> Houston, Texas 77002-6760

Attorney for Plaintiff

Houston.734535 1

-8-